NINA MARINO, ESQ. (State Bar No. 142815)
JENNIFER LIESER, ESQ. (State Bar No. 313707)
KAPLAN MARINO, PC
1546 N. Fairfax Ave.
Los Angeles, CA 90046
Tel: (310) 557-0007
Fax: (310) 861-1776
E-mail: marino@kaplanmarino.com
        lieser@kaplanmarino.com

Attorneys for Defendant
SAMIR OUSMAN ALSHEIKH

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 24-CR-00483-HDV |
| Plaintiff, | ) **MEMORANDUM IN SUPPORT** |
| | ) **OF SECOND APPLICATION** |
| v. | ) **FOR RECONSIDERATION OF** |
| | ) **DETENTION ORDER;** |
| | ) **EXHIBITS** |
| | ) |
| SAMIR OUSMAN ALSHEIKH | ) |
| | ) |
| Defendant. | ) |
| | ) |

Defendant Samir Ousman Alsheikh, by and through his counsel of record,

NINA MARINO and JENNIFER LIESER, hereby files this Memorandum in

Support of Second Application for Reconsideration of Detention Order.

This Memorandum incorporates by reference Mr. Alsheikh's prior

Application for Reconsideration of Order Setting Conditions of Release, including

all arguments and exhibits within (Dkt. No. 30) as well as all arguments previously

raised by the defense at the August 30, 2024 reconsideration hearing. (Dkt. No.

35.)

Dated: March 4, 2025                    Respectfully submitted,

                                        By: /s/ Nina Marino
                                            NINA MARINO
                                            JENNIFER LIESER
                                            Attorneys for Defendant
                                            Samir Ousman Alsheikh

# **TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................1

II.     PROCEDURAL HISTORY ................................................................2

III.    ARGUMENT ......................................................................................3

    A. Reconsideration of the Order of Detention is warranted .....................3

    B. The evidence rebuts the presumption against bail ...........................5

        1.  Nature and circumstances of the offense and weight of the
            evidence support bail with conditions .......................................6

            a.  Immigration fraud allegations ........................................6

            b.  Torture allegations..........................................................7

                i.  The alleged victims-activists have a motive
                    to fabricate allegations against Mr. Alsheikh
                    .........................................................................7

                ii.  The alleged victim-activist allegations of
                    torture against Mr. Alsheikh cannot be
                    verified.................................................................8

        2.  Mr. Alsheikh's history and characteristics support bail with
            conditions........................................................................9

        3.  Mr. Alsheikh is not a flight risk..............................................10

            a.  Mr. Alsheikh has no ties to the current Syrian
               government.......................................................10

            b.  The United States is Mr. Alsheikh's home ..........11

        4.  Mr. Alsheikh's release would not pose a danger to any person
            or community.....................................................................12

    C. Bail must be granted when there exists a combination of conditions
    and circumstances that can reasonably assure the defendant's
    appearance.................................................................................13

IV.     CONCLUSION .................................................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                              **Page(s)**

*Calderon-Rodriguez v. Wilcox*,
   374 F. Supp. 3d 1024 (W.D. Wash. 2019) ............................................................3

*Choudhry v. United States*,
   91-1949, 1992 U.S. App. LEXIS 15157 (1st Cir. Apr. 22, 1992) ......................7

*United States v. Cabactulan, et al.*,
   2:20-cr-00079-TJH (C.D. Cal. 2021) ....................................................................6

*United States v. Chen*,
   820 F. Supp. 1205 (N.D. Cal. 1992)......................................................................13

*United States v. Hearst*,
   424 F. Supp. 318 (N.D. Cal. 1976)........................................................................13

*United States v. Hir*,
   517 F.3d 1081 (9th Cir. 2008)............................................................................5, 6

*United States v. Khobragade*,
   15 F. Supp. 3d 383 (S.D.N.Y. 2014) .....................................................................6

*United States v. Laurean-Lozova*,
   2018 U.S. Dist. LEXIS 194289 (D. Ariz. Oct. 23, 2018) ...................................6

*United States v. Motamedi*,
   767 F.2d 1403 (9th Cir. 1985)...............................................................................5

*United States v. Smirnoff, et al.*,
   16-cr-00547-SVW (C.D. Cal. 2016). .....................................................................6

*United States v. Villegas*,
   587 F. Supp. 3d 1010 (9th Cir. 2020)....................................................................3

**Statutes**

18 U.S.C. § 1425......................................................................................................2

18 U.S.C. § 1546......................................................................................................2

18 U.S.C. § 2340...................................................................................................2, 5

1

### TABLE OF AUTHORITIES (cont.)

2

**Statutes (cont.)**                                                    **Page(s)**

3

18 U.S.C. § 2332b.................................................................................5

4

18 U.S.C. § 3141...............................................................................13

5

18 U.S.C. § 3142.......................................................................3, 5, 13

6

7

**Other Authorities**

8

AFP, *Syrian fighters execute 35 in 72 hours, mainly officers from former regime, monitor says*. The Times of Israel, Jan. 27, 2025 (https://www.timesofisrael.com/syrian-fighters-execute-35-in-72-hours-mainly-officers-from-former-regime-monitor-says/) (last accessed Feb. 18, 2025)....................................................................11

9

10

11

12

Naderi Hashemi, *The Arab Spring Unleashed a Wave of Torture and Abuse,* Newsweek, April 28, 2017 (https://www.newsweek.com/arab-spring-unleashed-wave-torture-and-abuse-589447.) ...............................................................9

13

14

15

Hina Shamsi, *20 Years Later, Guantánamo Remains a Disgraceful Stain on Our Nation. It Needs to End*, ACLU, Jan. 11, 2022 (https://web.archive.org/web/20230625142605/https://www.aclu.org/news/human-rights/20-years-later-guantanamo-remains-a-disgraceful-stain-on-our-nation-it-needs-to-end) ................................8

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>**TABLE OF EXHIBITS**</u>

2

3

Transcripts of August 30, 2024 proceedings.................................................Exhibit A

4

FBI-302 Interview Reports, excerpts.................................................................Exhibit B

5

6

Alsheikh Pertinent MDC Medical Records.................................................. Exhibit C

7

Character Letters.......................................................................................... Exhibit D

8

9

Sara Al Chikh financials and real property ..................................................Exhibit E

10

Sali Al Chikh financials and real property ...................................................Exhibit F

11

12

Rami Al Cheikh financials and real property ...............................................Exhibit G

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM**</u>

## I.    INTRODUCTION

On August 30, 2024, after giving the matter significant consideration ("I do not make this decision lightly"), the Court ordered 73-year-old Samir Alsheikh detained pending trial on the grounds of risk of flight and dangerousness. (Ex. A, transcripts of August 30, 2024 proceedings, at 41.) The Court stated that its Order of Detention was based on evidence presented by the government that Mr. Alsheikh had strong ties with Syria and connections with high-ranking members of the Syrian government, making him a significant risk of flight to Syria. (Id. at 39-40.) The Court further stated that the Order was based on the "horrific" nature of the allegations and the victim-activists' fear of Mr. Alsheikh and his potential influence if he was not detained prior to trial. (Id. at 40-41.)

On December 8, 2024, the Assad regime fell to rebel forces, and, with it, Mr. Alsheikh's "strong ties" and "influence" in the Syrian government.[1] For this reason, there exists a material change in circumstances meriting review of the Order of Detention. Further, as explained below, an examination of the relevant factors serves to rebut the presumption against release. Lastly, there exists a combination of conditions that will reasonably assure Mr. Alsheikh's appearance at trial and the safety of the community.

---

[1] The defense strongly disputes that Mr. Alshiekh maintained any ties with the Assad regime. The defense proffers that following an attempt on his life, Mr. Alsheikh was dismissed from his position as governor and his limited "ties" to those in the regime were thereupon severed.

For these reasons, reasonable bail should be granted.

## II.   PROCEDURAL HISTORY

On August 8, 2024, Mr. Alsheikh was indicted for alleged violations of 18 U.S.C. § 1546(a): Fraud and Misuse of Visas, and 18 U.S.C. § 1425(a): Attempted Unlawful Procurement of Naturalization. (Dkt. No. 24.) Although these allegations did not charge conspiracy and substantive torture (18 U.S.C. § 2340(a)(c)), the charges relied on those allegations and the government made clear at the August 30, 2024 bail reconsideration hearing that it was strongly considering seeking a superseding indictment on those specific charges. (Ex. A at 22.)[2] On December 12, 2024, the government filed a Superseding Indictment adding violations of 18 U.S.C. § 2340(c): Conspiracy to Commit Torture, and 18 U.S.C. § 2340(a): Torture. These new charges create a rebuttable presumption against pre-trial release.

Mr. Alsheikh, age 73 and having no criminal history, has been detained since July 9, 2024 and jury trial is currently scheduled for August 19, 2025.[3] (Dkt. No. 53.)

//

//

//

---

[2] Consequently, the Court has already considered the impact of allegation of torture in previously denying bail, however that consideration was framed and supported by Mr. Alsheikh's purported ties to high levels of Syrian government.

[3] Counsel has informed the government that the defense will not be ready for trial on August 19, 2025 and will be seeking a continuance of the trial date to at least February 2026.

## III.    ARGUMENT

### A.    Reconsideration of the Order of Detention is warranted.

Reconsideration of a defendant's detention order may be granted only on new information or a change in circumstances "that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f); *see also United States v. Villegas,* 587 F. Supp. 3d 1010, 1012 (9th Cir. 2020) (holding that consideration centers on whether there is any qualitatively different information with a material bearing on the only issue that matters for the Bail Reform Act – the risk of defendant's non-appearance at court proceedings or of their danger to the community if released).

The Ninth Circuit applies a two-pronged approach to bail reconsideration motions based on changed circumstances: (1) whether there is new material information or a material change of circumstances; and (2) whether that new material information or change of circumstances has a significant bearing on whether there are conditions of release that will reasonably assure a defendant's appearance in court and the safety of the community. *Id.*; *see also Calderon-Rodriguez v. Wilcox,* 374 F. Supp. 3d 1024, 1027 (W.D. Wash. 2019) (holding that the government must justify continued detention by clear and convincing evidence of current dangerousness or by a preponderance of the evidence of flight risk when a material

change in circumstances is presented that has a material bearing on the defendant's reasonable assurance of appearance).

Here, both prongs of the Ninth Circuit analysis are easily met. The fall of the Syrian regime constitutes a material change in circumstance. This is particularly so given the government's previous argument in support of detention (that Mr. Alsheikh has "very close ties with the Syrian regime," "Defendant here does have these high-level contacts [within the Syrian regime]") which now, given the fall of the regime, are rendered moot. (Ex. A at 19-20.) Second, the fall of the regime has a significant bearing on whether there are conditions of release that will reasonably assure Mr. Alsheikh's appearance in court and the safety of the community. Specifically, with the fall of the regime, so falls the government's argument that Mr. Alsheikh would flee to Syria as does the argument that his purported connections to those in high power in Syria could help him abscond or have the power to endanger or influence witnesses. Whatever alleged Syrian government support Mr. Alsheikh might have had to flee is now gone, as are whatever connections he had to figures of authority, as those figures are no longer in power.[4]

Accordingly, the Order of Detention is properly subject to review due to materially changed circumstances that have a significant bearing on pre-trial release determination.

//

---

[4] *See* n. 1, *supra.*

**B.    The evidence rebuts the presumption against bail.**

While charges of 18 U.S.C. § 2340(a) create a rebuttable presumption against pre-trial release, the Ninth Circuit has held that when faced with a such a presumption, the burden of persuasion remains with the government to prove (either by clear and convincing evidence for dangerousness or a preponderance of the evidence for flight risk) that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. §§ 3142, 2332b; *United States v. Motamedi*, 767 F.2d 1403, 1404-5 (9th Cir. 1985). Only the burden of production shifts to the defendant to present some evidence that they will not flee or pose a danger to the community if released. *Id.*

If a defendant proffers evidence to rebut the presumption of detention, the court must consider a variety of non-exhaustive factors, including: (1) nature and circumstance of the offense charged; (2) the weight of evidence against the defendant; (3) history and characteristics of the person, including character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history of drug/alcohol abuse; and (4) the nature and seriousness of the danger to any person or community that would be posed by release, or the prevalence of flight risk. *United States v. Hir,* 517 F.3d 1081, 1083 (9th Cir. 2008). A finding that a defendant is a danger to any other person, or the community must be supported by clear and convincing evidence, while the finding

1    that a defendant is a flight risk must be supported by a preponderance of the

2    evidence. *Id.*

3       Here, there exists sufficient evidence supporting the conclusion that Mr.

4    Alsheikh will not flee and does not pose any danger to the community if released.

5

6       1.  Nature and circumstances of the offense and weight of the evidence
            support bail with conditions.

7

8           a.  *Immigration fraud allegations.*

9

10      Regarding the allegations of immigration fraud, the government argued at the

11   bail review hearing that Mr. Alsheikh cannot be amenable to supervision because

12   "the allegation against him [relates] to untruthfulness." (Ex. A, at 25.) This is not

13   and has not been a basis for detention. This district and other districts throughout the

14   nation have regularly ordered defendants released on bail who have been charged

15   with immigration related fraud offenses. *See e.g., United States v. Cabactulan*, *et al.*,

16   C.D. Cal., 2:20-cr-00079-TJH (granting pretrial release for several defendants

17

18   charged with conspiracy to commit immigration fraud, among other offenses);

19   *United States v. Smirnoff, et al.*, C.D. Cal, 16-cr-00547-SVW (releasing lead

20

21   defendant charged with a 16-count indictment of visa fraud, aggravated identity theft

22   and other charges on a $50,000 appearance bond with electronic monitoring); *United*

23   *States v. Laurean-Lozova,* 2018 U.S. Dist. LEXIS 194289 (D. Ariz. Oct. 23, 2018)

24

25   (granting pretrial release for defendant charged with immigration fraud); *United*

26   *States v. Khobragade*, 15 F. Supp. 3d 383 (S.D.N.Y. 2014) (granting pretrial release

27

28   for defendant charged with visa fraud and making false statements to the

6

government); *Choudhry v. United States*, No. 91-1949, 1992 U.S. App. LEXIS 15157 (1st Cir. Apr. 22, 1992) (granting pretrial release for defendant charged with seven counts of immigration related fraud).

Additionally, immigration fraud is not unlike many other kinds of government program fraud. (i.e. tax fraud, bankruptcy fraud, Social Security or other government benefit fraud (HUD loans, food stamps).) In all those offenses, the accusations are grounded in a misrepresentation to the government as the basis for the charge, but the charge itself does not constitute a basis upon which to deny bail. As such, allegations of dishonesty grounded in a misrepresentation to the government are not part of the flight risk inquiry in setting bail.

b.    *Torture allegations.*

Second, with regard to the torture allegations, several factors are significant to the Court's consideration of the nature and circumstances of the offense and the weight of the evidence.

i.    The alleged victim-activists have a motive to fabricate allegations against Mr. Alsheikh.

The alleged victim-activists are Syrian citizens and known political dissidents or sympathizers who opposed the "Syrian government led by Bashar al Assad." (Dkt. No. 48, ¶ 19.) Mr. Alsheikh was employed by the Assad regime, the very regime against which these activists protested. These activists, therefore, have a motive to fabricate allegations against Mr. Alsheikh to further their own political agenda because Mr. Alsheikh represents the Assad regime. (Mr. Alsheikh does not argue

that these political dissidents were never tortured. Rather, Mr. Alsheikh argues that if these political dissidents were tortured, it was not by him or pursuant to his direction.) Certain alleged victim-activists also sought economic incentives in exchange for their cooperation with the government which further puts their motivation into question. (Ex. B, FBI-302 Interview Reports, excerpts.)

ii.  <u>The alleged victim-activist allegations of torture against Mr. Alsheikh cannot be verified.</u>

The alleged underlying conduct took place <u>17 to 20</u> years ago in a foreign country for which the United States had and continues to have no relations and therefore no way to verify or legitimize the accuracy of the allegations. Unlike a United States prison official accused of engaging in torture, which could be verified, the allegations here are fueled by, and based solely on, interview statements made by victim-activists alleging torture that occurred 17 to 20 years ago (from 2005 to 2008) in a hostile foreign country.

By way of contrast, it is undisputed that following the September 11 attacks and the United States declared "war on terror," that Guantanamo Bay was used to detain in inhumane conditions and torture those suspected of terrorist activities. *See e.g.,* Shamsi, Hina, ACLU, "20 Years Later, Guantánamo Remains a Disgraceful Stain on Our Nation. It Needs to End," (Jan. 11, 2022) (https://web.archive.org/web/20230625142605/https://www.aclu.org/news/human-rights/20-years-later-guantanamo-remains-a-disgraceful-stain-on-our-nation-it-needs-to-end) ("Our government's embrace of systematic torture shattered lives,

shredded this country's reputation in the world, and compromised national security.") In other words, because Guantanamo Bay was a U.S. facility, the validity and accuracy of the torture, and by whom, was documented and eventually disclosed.

While the Assad regime's use of torture with the advent of the Arab Spring in 2011 – which "unleash[ed] a wave of torture and abuse" against any who opposed or were suspected of opposing the government – is well reported, torture prior to this time-period, as alleged here, is not well documented. *See* Naderi Hashemi, Newsweek, "The Arab Spring Unleashed a Wave of Torture and Abuse," (April 28, 2017)        (https://www.newsweek.com/arab-spring-unleashed-wave-torture-and-abuse-589447.)

Because the victim-activists have a motive to fabricate allegations against Mr. Alsheikh and because the charges of torture are based solely on their testimony and cannot be independently verified, both the nature and circumstances and the weight of the evidence regarding the allegations of torture rebut the presumption against setting bail and support the sufficient evidence standard in favor of bail.

        2.  Mr. Alsheikh's history and characteristics support bail with conditions.

Mr. Alsheikh is 73 years old. He has been in custody for eight months. He has no criminal or drug/alcohol abuse history. He came to the United States to be with his wife, children, and grandchildren. Among other health conditions, he suffers from a pre-cancerous tumor on his neck, an abnormal mouth lesion, nasal polyposis,

and glaucoma, all of which require scans and treatment he has not received while at Metropolitan Detention Center (MDC). (Ex. C, Alsheikh Pertinent MDC Medical Records.)

The ten letters of support from his family and friends in the local Los Angeles area are powerful examples of Mr. Alsheikh's commitment to his family and describe someone known to be an honest, kind and trustworthy individual. (Ex. D, Character Letters, *passim*.) His family and local community, who are aware of the allegations, also resoundingly agree that Mr. Alsheikh would never do anything to jeopardize his family's wellbeing by compromising the life savings they are willing to pledge in support of bail by fleeing. (Ex. D, Character Letters, *passim*.) Of further import, Mr. Alsheikh's family are U.S. citizens who moved here for a better life, which they have achieved through post-graduate degrees and prestigious careers. They value their reputations in this country and are willing to act as sureties because they have no reservations that Mr. Alsheikh would ever violate a court order, which would also tarnish their reputations and positions.

   3. Mr. Alsheikh is not a flight risk.

      *a.  Mr. Alsheikh has no ties to the current Syrian government.*

Our government, in arguing for pre-trial detention due to risk of flight, relied heavily on Mr. Alsheikh's alleged ties to the Syrian government – which the defense flatly disputes (see n. 1, *supra*) – based on contacts in his phone, as follows: Alsheikh "had and currently still has very close ties to the Syrian regime. . . He has a house in

Syria and resources there. . . [he has] high level contacts. . . and these individuals are the current head of the General Intelligence Directorate and the former head of the Political Security Directorate. . . a former Syrian Ambassador to the United Nations. . . as well as. . . Maher Al-Assad. . . the commander of the Fourth Division of the Military. . . as well as the son of Bashar Al-Assad. . . The ties are there." (Ex. A at 19, 20.)  Now, those purported contacts have fled Syria or no longer have any power there – in fact, Syria is now a potentially dangerous place for them to be.[5] Therefore, the government's argument that Mr. Alsheikh has high level contacts in Syria that would enable his flight is no longer persuasive.

>    b.  *The United States is Mr. Alshiekh's home.*

Further, it bears repeating that the United States has been Mr. Alsheikh's home for the past nearly five years. (Dkt. No. 48, ¶ 14.) This is where his wife, two daughters, their husbands, his son, and his three grandchildren, among friends, reside. He left Syria for the United States to be with them. (See Ex. D, Character Letters, passim.)

//

//

---

[5] It is well documented that the new government has been arresting previous regime figures in an aggressive and humiliating way and has even engaged in on-the-spot executions. *See* AFP, The Times of Israel, "Syrian fighters execute 35 in 72 hours, mainly officers from former regime, monitor says (Jan. 27, 2025) (https://www.timesofisrael.com/syrian-fighters-execute-35-in-72-hours-mainly-officers-from-former-regime-monitor-says/) (last accessed Feb. 18, 2025) (" Fighters affiliated with Syria's new Islamist leaders have carried out 35 summary executions over 72 hours, mostly of Assad-era officers…")

Finally, Mr. Alsheikh also doesn't speak or understand English, which militates against the risk of flight. For these reasons, the government cannot demonstrate by a preponderance of the evidence that Mr. Alsheikh is a flight risk.

    4.  <u>Mr. Alsheikh's release would not pose a danger to any person or community.</u>

The government also argued that Mr. Alsheikh, age 73, a man with no criminal history, in failing health, poses a danger to the public if released to his family in Long Beach with very restrictive release conditions because he could use his "government contacts" to "intimidate, scare or obstruct justice." (Ex. A, at 26.) Because the Assad regime has fallen and those purported contacts no longer have any power, this argument is no longer persuasive. If Mr. Alsheikh had any power to intimidate, scare, or obstruct justice, which the defense flatly and vehemently denies he ever did, he certainly does not now.[6] To argue the alleged victim-activists are fearful is nothing more than a theory in search of facts.

---

[6] *See* n. 1, *supra*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

█████. Clearly in opposition of the former Assad regime (and therefore also Mr. Alsheikh), these victim-activist witnesses now find support in Syria's new president.

There is no rational or factual basis upon which to accept that Mr. Alsheikh currently poses a danger to the alleged victim-activists for events that allegedly happened 17 to 20 years ago, in a foreign country, and who currently reside thousands of miles away. Thus, the government cannot meet its burden here either.

> **C.** **Bail must be granted when there exists a combination of conditions and circumstances that can reasonably assure the defendant's appearance.**

The Bail Reform Act of 1984 requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3141; *see also United States v. Chen,* 820 F. Supp. 1205, 1207 (N.D. Cal. 1992). The Bail Reform Act presumes release except in a narrow range of cases. For that reason, the Court may not maintain a blanket policy of detention. Instead, every bail determination must be individualized. *See* 18 U.S.C. §3142(g). "Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight [or safety]." *United States v. Chen,* 820 F. Supp. at 1208.

Courts determine whether proposed conditions of release can reasonably assure a defendant's appearance and the safety of the community on a factual basis. *United States v. Hearst,* 424 F. Supp. 318, 321 (N.D. Cal. 1976) (holding that a court can

impose a combination of the following conditions as necessary to reasonably assure the defendant's appearance: travel restrictions, execution of a bail with sufficient solvent sureties, placing the person in custody of a designated person or organization agreeing to supervise him, or any other condition or combination of conditions deemed reasonably necessary to assure appearance as required).

Although Mr. Alsheikh poses no flight risk or danger to his community, he is amenable to severely restrictive conditions for pre-trial release. Mr. Alsheikh's daughter, Sara Al Chikh, and his son-in-law, Sofian Haikal, have pledged to take responsibility for Mr. Alsheikh and have him reside with them in their Long Beach home upon release. (Ex. D, Character Letters, at 9-10.) They will execute Affidavits of Third-Party Custodian, certifying to this Court with risk of being held in contempt if they fail to do so, that they will use every effort to assure Mr. Alsheikh's appearance at all court proceedings and will notify Pretrial Services immediately if Mr. Alshiekh violates a condition of release or is no longer in their custody.[7] (CR-31, Affidavit of Third-Party Custodian.) Mr. Alsheikh is also willing to comply with location monitoring, daily check-ins, and other means of tracking to ensure compliance.

Further, Mr. Alsheikh's family (who are aware of the charges and circumstances he is facing) will serve as sureties by signing bonds backed by

_____

[7] Mr. Alsheikh's second daughter, Sali Al Chikh, and her husband, are also willing to act as Third-Party Custodians and have Mr. Alsheikh live with them in their Irvine home as well.

everything they have, including their life savings, retirement accounts, real property, and funds set aside for their children's education. (Ex. D, Character Letters, at 1-8; Exs. E-G, *infra*.) In the words of his youngest adult son, Rami Al Cheikh: "I am putting everything I have worked for on the line to prove that our family stands by him, and we pledge that he will comply with all bail conditions[.]" (Ex. D, Character Letters, at 4.) These sureties include:

- Sara Al Chikh and her husband – Mr. Alsheikh's daughter – will sign a $1.65 million bond secured by liquid assets they own in investment accounts. They will also deed $180,000 in equity in real property they own. (Ex. E, Sara Al Chikh financials and property equity.)

- Sali Al Chikh and her husband – Mr. Alsheikh's daughter – will sign a bond in the amount of $712,000 secured by liquid assets they own in investment and saving accounts. They will also deed $137,000 in equity in real property they own. (Ex. F, Sali Al Chikh financials and property equity.)

- Rami Al Cheikh – Mr. Alsheikh's son – will deed $189,381 in equity in two properties. He will also sign a bond in the amount of $11,616 secured by liquid assets he owns in a checking account. (Ex. G, Rami Al Cheikh financials and property equity.)

(*See also,* Ex. D, Character Letters, at 1-8.)

All of the proposed sureties have been advised of the responsibility that comes

with being a surety, and the reality that the government could and would seek to

collect on these obligations should Mr. Alsheikh violate the terms of any bond.

**IV.    CONCLUSION**

For all of these reasons, it is respectfully requested that this Court grant pre-

trial release with conditions.

Dated: March 4, 2025                              Respectfully submitted,


                                                  By:   */s/ Nina Marino*
                                                        NINA MARINO
                                                        JENNIFER LIESER
                                                        Attorneys for Defendant
                                                        Samir Ousman Alsheikh