JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
JOSHUA O. MAUSNER (Cal. Bar No. 260251)
Assistant United States Attorney
Chief, Violent and Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0619
     Facsimile: (213) 894-3713
     E-mail:    joshua.mausner@usdoj.gov

MATTHEW R. GALEOTTI
Supervisory Official for the Criminal Division
PATRICK JASPERSE (D.C. Bar No. 986804)
ALEXANDRA SKINNION (Penn. Bar No. 327795)
Trial Attorneys
U.S. Department of Justice
Criminal Division
Human Rights and Special Prosecutions Section
     1301 New York Avenue, NW
     Washington, DC 20503
     Telephone: (202) 616-8917 / (202) 307-6641
     Email:     patrick.jasperse@usdoj.gov
                alexandra.skinnion@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-00483-HDV |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S SECOND APPLICATION FOR RECONSIDERATION OF PRETRIAL DETENTION ORDER |
| v. | |
| SAMIR OUSMAN ALSHEIKH, | Hearing Date: April 3, 2025 |
| Defendant. | Hearing Time: 1:30 p.m. |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorney Joshua O. Mausner, the Supervisory Official for the Criminal Division of the Department

of Justice, and Department of Justice Trial Attorneys Patrick Jasperse and Alexandra Skinnion, hereby files its Opposition to Defendant's Second Application for Reconsideration of Pretrial Detention Order (Dkt. 56).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 20, 2025              Respectfully submitted,

                                   JOSEPH T. MCNALLY
                                   Acting United States Attorney

                                   LINDSEY GREER DOTSON
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                    /s/
                                   JOSHUA O. MAUSNER
                                   Assistant United States Attorney

                                   MATTHEW R. GALEOTTI
                                   Supervisory Official for the
                                   Criminal Division

                                   PATRICK JASPERSE
                                   ALEXANDRA SKINNION
                                   Trial Attorneys
                                   U.S. Department of Justice
                                   Criminal Division
                                   Human Rights and Special
                                   Prosecutions Section

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   BACKGROUND**

Defendant Samir Ousman Alsheikh ("defendant") has been detained since July 10, 2024, (Dkt. 6) when he was arrested on a criminal complaint (Dkt. 1) at Los Angeles International Airport before attempting to board a one-way flight to the Middle East.  Defendant is a former Syrian domestic intelligence officer who rose to the rank of Brigadier General in the Syrian Interior Ministry.  From approximately 2005 to 2008, defendant was the head of Damascus Central Prison (known as "Adra Prison"), where political prisoners and other prisoners were tortured and badly mistreated.  Defendant was later appointed by then-Syrian President Bashar al-Assad to be the governor of a Syrian province around the time the Syrian civil war began in 2011.

On July 12, 2024, Magistrate Judge Patricia Donahue ordered defendant detained pending trial, finding that no conditions of release would reasonably assure the safety of any other person and the community, nor reasonably assure defendant's appearance.  (Dkt. 15.)

On August 8, 2024, a grand jury returned a two-count Indictment against defendant.  (Dkt. 24.)  The first count accused defendant of providing materially false information to U.S. immigration officials to obtain a visa that enabled him to enter the United States in 2020, in violation of 18 U.S.C. § 1546(a).  The second count accused defendant of providing materially false information on a naturalization application he submitted in 2023, in violation of 18 U.S.C. § 1425(a).

On August 30, 2024, after an extensive hearing in response to defendant's first motion to reconsider detention, Judge Donahue again ruled that defendant should be detained on grounds of both risk of flight and dangerousness. (Dkt. 56-1 at 41.) Judge Donahue held: "Certainly one factor, not a determinative factor but one factor, certainly is the fact that he has strong ties with a country with which the United States has no diplomatic relations whatsoever. . . . But that is a factor, but certainly not the only reason why he — I think there is a significant risk of flight, looking at the Defendant's entire background." (Id. at 39.) Judge Donahue also based her decision on the allegations that defendant previously lied to the United States, the "horrific" conduct the defendant was accused of, and the credible fear witnesses had of defendant and "his influence if he were not detained prior to trial." (Id. at 39-41.) Judge Donahue referred to the government's witnesses as "witnesses" (Id. at 40) and not, as defendant suggests, as "victim-activists" (Dkt. 56 at 1).

On December 12, 2024, a grand jury returned the First Superseding Indictment, which added far more serious charges that allege far more horrific conduct. (Dkt. 48.) Count One of the Superseding Indictment charges defendant with violating 18 U.S.C. § 2340A(c) by conspiring with Syrian government officials, prison officials, and prison guards to torture political dissidents and other prisoners who were perceived as sympathizing with political dissidents who opposed the Syrian government. The Superseding Indictment also charges defendant with three counts of torture, in violation of 18 U.S.C. § 2340A(a), each involving torture of prisoners at Adra Prison who either refused defendant's orders to

2

harm prominent Syrian dissidents who also were held at the prison or who wrote a letter expressing support for one of the dissident's opposition to the Assad government. Count Two alleges that defendant ordered and personally participated in the torture of a prisoner, identified in the Superseding Indictment by his initials, K.A.M. That torture included strapping K.A.M. to a wooden device with hinges known as the "Flying Carpet" and pressing the bottom half of the device on top of the upper half, forcing K.A.M.'s body to fold in half at the waist and causing excruciating pain and serious back injuries. Count Three alleges defendant ordered a prisoner whose initials are M.S. to be tortured, including suspending him from the ceiling for hours at a time in a crucifixion-like position and folding his body over on the Flying Carpet. Count Four alleges defendant ordered a prisoner whose initials are N.S. to be tortured, including on the Flying Carpet, resulting in the fracture of N.S.' spine. Counts Five and Six of the Superseding Indictment accuse defendant of the immigration fraud violations charged in the original Indictment and discussed above.

Pursuant to the parties' stipulation (Dkt. 52 at 6), the Court scheduled trial in this matter to begin on August 19, 2025 (Dkt. 53).[1]

On March 4, 2025, defendant filed this second application for reconsideration of the order of detention. (Dkt. 56.) Defendant presents two primary arguments for release: (1) the overthrow of the Assad regime in December 2024 eliminates the risk of flight to Syria

---

[1] Defendant now indicates that he will be seeking an additional 6-month continuance until February 2026, although he has not yet filed a continuance motion. (Dkt. 56 at 2, n. 3.)

3

and (2) the evidence against defendant comes from witnesses whom defendant characterizes as "victim-activists" who have a motive to fabricate allegations against defendant and whose allegations "cannot be verified." Neither of defendant's arguments overcome the presumption that he should be detained until trial. Defendant remains a significant flight risk and a danger, and he should remain detained.

## II. ARGUMENT

### A. Applicable Law

The Bail Reform Act of 1984 authorizes pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In other words, detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. Motamedi, 767 F.2d at 1406. A detention order should be reconsidered only if there is new information "that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f); United States v. Villegas, 587 F. Supp. 3d 1010, 1012 (C.D. Cal. 2020).

Defendant is now charged with torture, an offense so serious that Congress has created a rebuttable presumption that no condition

4

or combination of conditions will assure the safety of the community and the defendant's appearance.  18 U.S.C. § 3142(e)(2) and (3).  The torture statute, 18 U.S.C. § 2340A, is an offense listed in 18 U.S.C. § 2332b(g)(5)(B)(i) and prescribes a maximum term of imprisonment of 20 years.  Consequently, pursuant to 18 U.S.C. § 3142(e)(3)(C), the Court must presume that no condition or combination of conditions will reasonably assure defendant's appearance as required and the safety of the community.  When, as in this situation, there is a presumption of detention, defendant must be detained unless he produces credible evidence that forms a basis for his contention that he will appear and will not pose a threat to the community.  United States v. Walton, No. 24-CR-1976-JO, 2025 WL 437906, at *2 (S.D. Cal. Feb. 7, 2025) (citation omitted).  The burden of production is on defendant; the burden of persuasion is on the government.  United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008).  "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."  Id. (quotation and citation omitted).

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, courts must consider: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

### B. The Nature and Circumstances of the Offense

Defendant has not met his burden to show that changed circumstances warrant reversal of the two prior orders of detention. The most material change in circumstances since Judge Donahue initially ordered defendant's detention in July 2024, and reaffirmed the detention order in August 2024, is the return of the Superseding Indictment in December 2024 that added charges of torture against defendant to the immigration fraud charges, a material change *strengthening* the need for pretrial detention, not warranting reconsideration. Torture is one of the most serious federal crimes in the Criminal Code. Torture not resulting in death can be punished by up to 20 years in prison and there is a rebuttable presumption that defendants charged with torture should be detained before trial.

When defendant was detained on the original indictment, he faced one count of visa fraud (18 U.S.C. § 1546) and one count of attempted naturalization fraud (18 U.S.C. § 1425). He was ordered detained, twice, when facing only immigration fraud charges, when no presumption of detention applied. The defendant now faces three counts of torture and one count of conspiracy to commit torture, and detention is statutorily presumed. If defendant were convicted of those charges and if the Court applied the kidnapping, abduction, and unlawful restraint guideline (U.S.S.G. § 2A4.1(a) — as would be appropriate in light of the unlawful restraint of the victims while they were placed on the Flying Carpet and otherwise restrained while being tortured — the base offense level would be 32, for which the advisory guidelines sentencing range is 121 to 151 months in prison. The facts here, however, warrant application of additional sentencing enhancements. Applying enhancements for victims who sustained

6

1  permanent or life-threatening bodily injuries (§ 2A4.1(b)(2)(A)),
2  defendant's use of a dangerous weapon (§ 2A4.1(b)(3)), vulnerable
3  victims (§ 3A1.1(b)(1)), defendant being the organizer or leader of
4  criminal activity that involved five or more participants
5  (§ 3B1.1(a)), and abuse of a position of trust (§ 3B1.3), raise
6  defendant's offense level to at least 43, for which the advisory
7  guidelines sentencing range is life in prison.  Even if the Court
8  were to apply the lower aggravated assault guideline, instead of the
9  unlawful restraint guideline, defendant's total offense level with
10 enhancements would be at least 34, for which the advisory guidelines
11 sentencing range is 151 to 188 months in prison.
12      The likelihood of a significant prison sentence gives a
13 defendant a strong incentive to flee.  United States v. Townsend, 897
14 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties
15 possible under the present indictment, the defendants have an even
16 greater incentive to consider flight.").  In August 2024, when
17 defendant was facing only immigration fraud charges for which the
18 sentencing guidelines are relatively light, Judge Donahue found that
19 defendant had a "clear" incentive to flee.  (Dkt. 56-1 at 39.)
20 Today, with the 73-year-old defendant facing significantly more
21 severe torture charges that carry the potential for a life sentence,
22 defendant has an even greater incentive to flee.
23      **C.   The Weight of the Evidence**
24      Although the weight of the evidence is the least important of
25 the factors, Motamedi, 767 F.2d at 1408, it also favors detention.
26 Defendant asserts that the government's witnesses are opponents of
27 the Assad regime who "have a motive to fabricate allegations against
28 Mr. Alsheikh to further their own political agenda because Mr.

Alsheikh represents the Assad regime." (Dkt. 56 at 7.) It will ultimately be for the jury to evaluate the credibility of the victims, but the Court should be aware that at the time K.A.M., M.S., and N.S. were imprisoned and tortured at Adra Prison, none of them were "activists." K.A.M. was imprisoned for abandoning his post as a Syrian police officer after one of his supervisors tried to kill him. M.S. was imprisoned because a neighbor falsely reported that he had insulted Assad. N.S. was imprisoned after being involved in a motor vehicle accident involving the son of a high-ranking Syrian military officer. Each of the victims were ordinary Syrians who were swept up in the Assad regime's security state and placed in the prison in which defendant was in charge. Then, when K.A.M. and M.S. refused to harm prominent Syrian dissidents who were also imprisoned at Adra and when a letter of support from N.S. to one of the prominent dissidents was intercepted by prison officials, defendant had them tortured. After escaping from Syria, N.S. has posted on social media about his opposition to the Assad government but — to the government's knowledge — neither K.A.M. nor M.S. have any social media presence, nor could they be characterized as "activists."

    Defendant also contends that two "alleged victim-activists also sought economic incentives in exchange for their cooperation with the government which further puts their motivation into question." (Dkt. 56 at 8 and Ex. B.) These two witnesses were interviewed during the investigation and reports of those interviews have been produced in discovery in an abundance of caution, but neither of these two witnesses was imprisoned at Adra Prison and neither is expected to be called by the government as a witness at trial. The motivations of these two "alleged victim-activists" are irrelevant to the charges

8

against defendant and the evidence the government will present at trial.[2]

Defendant additionally complains that that the victims' allegations cannot be verified. (Dkt. 56 at 8.) In fact, the government has produced in discovery medical records that document that K.A.M. and N.S. each have significant back injuries — injuries that are consistent with being violently doubled over at the waist on the Flying Carpet. The discovery also includes a statement N.S. gave in 2011, as part of a medical and psychological evaluation, in which he recounted the physical abuse he suffered while detained at Adra Prison after writing a letter of support to a prominent dissident. The statement, made more than a decade before the charges against defendant were filed, is consistent with key details of N.S.'s anticipated testimony. In addition, the government has produced in discovery an order signed by defendant that assigned K.A.M. to the same prison wing where the dissident whom defendant wanted K.A.M. to hurt was imprisoned. This corroborates that defendant (1) knew K.A.M. and (2) ordered K.A.M. to be moved to the same part of the prison as the dissident, thus lending credibility to K.A.M.'s anticipated testimony that defendant ordered K.A.M. to harm the dissident.

Even absent the corroborating evidence the government has produced to the defense, testimony alone can be sufficient to

---

[2] Additionally, defendant's argument that the witnesses to defendant's criminal conduct here are "activists" was raised by the defense in the prior motion for reconsideration. (Dkt. 56-1 at 13-15.) This recycled argument in not a new circumstance warranting reconsideration of the prior detention orders. The same argument was already considered and rejected by Judge Donahue when she denied the prior motion and reaffirmed defendant's pretrial detention order.

9

establish the physical abuse of prisoners by prison guards or officials.  See, e.g., United States v. Martinez, 110 F.4th 160, 172 (2d Cir. 2024) (affirming conviction of prison guard for aggravated sexual abuse of an inmate by force and other charges based on testimony of the victim); United States v. McQueen, 727 F.3d 1144, 1153-54 (11th Cir. 2013) (affirming conviction of state prison sergeant for conspiring to deprive inmates of their right to be free from cruel and unusual punishment, in violation of 18 U.S.C. § 241, based on witness testimony); United States v. Walsh, 194 F.3d 37, 51-52 (2d Cir. 1999) (affirming conviction of corrections officer for violating 18 U.S.C. § 242 based on testimony of victim and three corrections officers even though there were some inconsistencies in their testimony); United States v. Bigham, 812 F.2d 943, 947-48 (5th Cir. 1987) (affirming conviction of corrections officer for violating 18 U.S.C. §§ 241 and 242 based on witness testimony).

Finally, defendant is mistaken when he contends that the torture of prisoners in Syria prior to the outset of the civil war and Arab Spring is not well documented.  (Dkt. 56 at 9.)  There is ample evidence that torture was systematic and widespread in Syrian prisons both prior to and after the Syrian civil war and Arab Spring.[3]

---

[3] See, e.g., https://www.asharqalarabi.org.uk/bashar/sujon.pdf (February 12, 2007, report in Arabic by the Syrian Human Rights Organization that on page 20 describes the torture of prisoners at Adra Prison, including confinement in small, solitary cells in Wing 13 and beatings with cables).  These descriptions are consistent with allegations in the Superseding Indictment at ¶¶ 20(a) and (i).

**D.  The History and Characteristics of Defendant**

Defendant is a Syrian national who served in high-level government positions in the Assad regime, including as an officer in the Syrian police and intelligence services, the head of Adra Prison, and Governor of the Deir Ez-Zour region of Syria, a position he was personally appointed to by former Syrian President Bashar al-Assad. Contrary to what defendant asserts (Dkt. 56 at 4), the overthrow of the Assad regime does not establish that defendant no longer has connections to figures of authority in that regime nor does it eliminate the risk of fleeing to a country other than Syria.  Public reporting indicates that Assad fled to Russia after the overthrow of his government last year, and that other former officials in the Assad government have fled to Russia, Lebanon, the United Arab Emirates, and possibly Iran.[4]  None of those countries have extradition treaties with the United States.  If defendant fled to any one of those countries upon release, it is unlikely the United States would be able to get him back.

Moreover, the risk of defendant's flight to Syria still exists. Defendant declares that the overthrow of the Assad regime eliminated the risk of flight to Syria while simultaneously asserting that his "limited" ties to the Assad regime have not been maintained.  (Dkt.

---

[4] See, e.g., https://www.nbcnews.com/news/world/syria-bashar-assad-russia-rebels-ryabkov-sanctuary-rcna183594 (Assad to Russia); https://www.newarab.com/news/how-assads-inner-circle-fled-syria-after-his-fall (Assad officials to Russia and Lebanon); https://www.timesofisrael.com/liveblog entry/report-senior-syrian-officials-fled-to-lebanon-with-help-of-hezbollah-after-fall-of-assad/ (Lebanon); https://www.france24.com/en/middle-east/20241227-butcher-of-hama-assad-s-uncle-rifaat-fled-to-dubai-say-lebanese-officials-syria (United Arab Emirates); https://english.aawsat.com/arab-world/5107369-iran-seeks-protect-syrians-fleeing-lebanon-after-assad%E2%80%99s-fall (Iran).

56 at 1, n.1).  Syria's political future is fluid and uncertain.  The exhibits attached to defendant's motion include letters from three of his children who are living in the United States, but his motion does not mention that he has a fourth child who — at least as of the last detention hearing in August 2024 — was living in Syria.  (Dkt. 56-1 at 10.)  Defendant also has grandchildren living in Syria.  (Dkt. 56-1 at 33.)  Based on the last information available to the government, defendant also owns a house in Syria worth approximately $300,000.  (Id. at 19.)

Defendant's assertion that he is not a risk of flight because "the United States is Mr. Alsheikh's home" (Dkt. 56 at 11) is belied by the facts and records in this case.  In fact, as the defense argued at the hearing on the prior motion for reconsideration of detention, defendant "often feels like a stranger in a strange land here in the United States."  (Dkt. 56-1 at 33.)[5]  Similarly, defendant's argument that he permanently "left Syria for the United States to be with [his family]" (Dkt. 56 at 11) is also contradicted by arguments defendant made at the hearing on the prior motion.  Previously, defendant conceded that "[h]e comes back to see his family, but he has no interest in staying in one place or the other permanently.  He considers Syria to be home as much as he considers here to be home, with his family."  (Dkt. 56-1 at 33.)  There is no doubt defendant still has strong connections to Syria.

---

[5] Defendant states in passing in his motion that "Mr. Alsheikh also doesn't speak or understand English, which militates against the risk of flight."  (Dkt. 56 at 12.)  It is unclear from defendant's motion how inability to speak English militates *against* risk of flight, as opposed to being further incentive for defendant to flee, including to a country where he speaks the language, feels less like "a stranger in a strange land," and can at the same time escape justice for the crimes for which he is charged.

12

In addition, defendant's promises to appear in court if released pretrial should be considered in light of Counts Five and Six of the Superseding Indictment, which allege that defendant already has lied to the U.S. government when it suited his purposes. See United States v. Cabactulan, No. MJ 20-00354-DUTY, 2020 WL 758955, at *3 (C.D. Cal. Feb. 14, 2020) (understanding of the immigration system, skills to manipulate that system, history of defrauding immigration officials, and disregard for the rule of law among the factors warranting pretrial detention); United States v. Torres, No. 3:24-CR-1871-AGS, 2024 WL 4204267, at *1 (S.D. Cal. Sept. 16, 2024) (pending charge of crime involving the use of false statements one factor justifying continued pretrial detention). Defendant remains a significant flight risk and should remain detained.

### E. Danger to Any Person or the Community

Defendant has provided no new information or changed circumstances to disrupt Judge Donahue's prior findings of detention on the basis of danger. Any proposed bond offered by defendant or his family has no bearing on the danger element, which itself is an independent basis for detention.[6] As Judge Donahue previously found,

---

[6] The bail resources proposed in defendant's current motion are not new circumstances warranting reconsideration of detention. The same bail resources were presented in defendant's prior motion for reconsideration and were rejected as providing adequate assurance of defendant's appearance. (Dkt. 56-1 at 7 (Defense counsel arguing "It's important to understand that [defendant's family] have come forward with upwards of two and a half million dollars in resources to demonstrate to the Court how firmly they believe in their father, their father-in-law, that he will stay here. . . . The two and a half million dollars is not some vacation home that these folks own the desert. This is every dollar they have in the world.").) As Judge Donahue previously held, "Your arguments are well taken, and the Defendant has considerable family support and considerable bail resources. However, looking at all of the factors in 18 U.S.C. Section 3553, it is on this record clear that he presents a significant risk of flight." (Dkt. 56-1 at 39.)

13

the allegations against defendant show a history of violence and an association with a violent and repressive regime, and thus defendant poses a danger to the community, including to victims and witnesses in this case. Accordingly, defendant should remain detained independently on the basis of danger, as well on the basis of continuing to be a significant flight risk.

**III. CONCLUSION**

Based on the above, defendant's pretrial release would pose a substantial risk of non-appearance and danger to the community. Defendant has not overcome the statutory presumption that he should be detained pending trial. Therefore, defendant's second motion for reconsideration should be denied and the Court should order that he continue to be detained pending trial.

the allegations against defendant show a history of violence and an association with a violent and repressive regime, and thus defendant poses a danger to the community, including to victims and witnesses in this case. Accordingly, defendant should remain detained independently on the basis of danger, as well on the basis of continuing to be a significant flight risk.

**III. CONCLUSION**

Based on the above, defendant's pretrial release would pose a substantial risk of non-appearance and danger to the community. Defendant has not overcome the statutory presumption that he should be detained pending trial. Therefore, defendant's second motion for reconsideration should be denied and the Court should order that he continue to be detained pending trial.