NINA MARINO, ESQ. (State Bar No. 142815)
JENNIFER LIESER, ESQ. (State Bar No. 313707)
MORIAH RADIN, ESQ. (State Bar No. 260245)
COLLIN CATE, ESQ. (State Bar No. 365876)
KAPLAN MARINO, PC
1546 N. Fairfax Ave.
Los Angeles, CA 90046
Tel: (310) 557-0007
Fax: (310) 861-1776
E-mail: marino@kaplanmarino.com
　　　　lieser@kaplanmarino.com
　　　　radin@kaplanmarino.com
　　　　cate@kaplanmarino.com

Attorneys for Defendant
SAMIR OUSMAN ALSHEIKH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAMIR OUSMAN ALSHEIKH<br><br>　　　　Defendant. | Case No. 24-CR-00483-HDV<br><br>**NOTICE OF MOTION AND MOTION FOR LIVE TWO-WAY VIDEO TESTIMONY; DECLARATION OF JENNIFER LIESER**<br><br>**[FED. R. CRIM. P 26]**<br><br>Honorable Hernan D. Vera<br><br>Hearing Date: February 19, 2026<br>Trial Date: March 2, 2026 |

1     PLEASE TAKE NOTICE that on February 19, 2026 or as soon thereafter, Defendant Samir Ousman Alsheikh, by and through undersigned counsel, will and hereby does move this Court for an Order permitting certain witnesses to testify remotely via contemporaneous two-way video transmission during trial pursuant to Federal Rule of Criminal Procedure 26 based on a showing of case-specific necessity to dispense of witness physical presence.

    This Motion is based on Mr. Alsheikh's rights and privileges under Federal Rules of Criminal Procedure 26, the Fifth and Sixth Amendments to the United States Constitution, prevailing case law, the Memorandum of Points and Authorities, the pleadings and papers on file, and any oral argument permitted by the Court.

Dated: January 22, 2026            Respectfully submitted,

                                           By: _____/s/_____
                                                   NINA MARINO
                                                   JENNIFER LIESER
                                                   MORIAH RADIN
                                                   COLLIN CATE
                                                   Attorneys for Defendant
                                                   Samir Ousman Alsheikh

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Samir Ousman Alsheikh moves for an Order allowing witnesses to testify at trial via contemporaneous two-way video. These witnesses are critical to Mr. Alsheikh's defense; however, these witnesses do not reside in the United States and cannot or may not be able to travel to the United States for multiple reasons, including travel restrictions affecting all Syrian nationals, lack of travel permissions to enter the United States, and other impediments to international travel. Mr. Alsheikh's right to present a complete defense under the Fifth, Sixth and Fourteenth Amendments would be irreparably denied if the jury is deprived of these witnesses' exculpatory testimony. At the January 6, 2026 Status Conference, this Court indicated that it was amenable to permitting remote testimony.

## II. RELEVANT BACKGROUND

Mr. Alsheikh is charged in the First Superseding Indictment ("FSI") with violations of 18 U.S.C. section 2340(a): Torture, 2340(c): Conspiracy to Commit Torture, 1546(a): Fraud and Misuse of Visas, and 1425(a): Attempted Unlawful Procurement of Naturalization. If convicted, he faces serving the rest of his life in prison.

The FSI alleges that Mr. Alsheikh, while working as the head of Adra Central Prison in Damascus, Syria, ("Adra") ordered and participated in the torture of inmates, particularly political prisoners, and oversaw the physical mistreatment of prisoners between the years 2005 to 2008. The allegations are grounded in the statements of approximately nine former inmates detained in Adra during the relevant time period. The government further alleges that Mr. Alsheikh lied about these events to obtain immigration status in the United States.

To rebut these allegations, the defense intends to call ███████████ ████████████████████████████████████████████████████████

██████████████████████████████████████████ who will provide testimony that contradicts the testimony of the government's witnesses, and who, for a myriad of reasons, cannot travel overseas for a trial in the United States.

### III. LEGAL FRAMEWORK

Although Federal Rule of Criminal Procedure 26 prioritizes in-court testimony, courts permit remote testimony upon a case-specific showing of necessity and reliability. Fed. R. Crim. P. 26 (testimony must be in open court "unless otherwise provided by a statute, by these rules, or by the Federal Rules of Evidence"); *Maryland v. Craig*, 497 U.S. 836, 850 (1990) (permitting remote testimony upon case-specific showing of necessity).

Most precedent addresses the implications of video testimony on the defendant's Confrontation Clause rights because it is typically the government who seeks to admit testimony by video. *United States v. Pritchard*, 2024 WL 4347815, *3 (D. Ariz. Sept. 30, 2024). The right to confront and to cross-examine witnesses is a right held by a *defendant* and can be waived. *United States v. Alahmedalabdaloklah* (Oklah)*,* 94 F.4th 782, 817 (9th Cir. 2024) ("Thus, the record shows that Oklah made a strategic decision to waive the [Confrontation Clause] objection he now advances."). When defendants request live two-way video testimony and affirm that this method comports with their right under the Confrontation Clause, the limitations *Craig* proscribes are inapposite.

Additionally, Rule 26's emphasis on in-court testimony cannot be so rigidly applied to thwart a defendant's ability to present their defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (internal quotation omitted)). The Supreme Court has indicated that a defendant's right to present a defense stems both from the right to due process provided by the Fourteenth Amendment, *see Chambers v. Mississippi,* 410 U.S. 284, 294 (1973), and from the right "to have compulsory process for obtaining witnesses in his favor" provided

1  by the Sixth Amendment, *see Washington v. Texas*, 388 U.S. 14, 23 (1967)
2  (explaining that the right to compulsory process would be meaningless if the
3  defendant lacked the right to use the witnesses whose presence he compelled);
4  *Holmes v. South Carolina*, 547 U.S. 319, 324-26 (2006). Rules of evidence and
5  procedure cannot be applied in a way that arbitrarily or disproportionately impedes
6  that right. *Id.* at 324-25.
7       A clear, demonstrated justification for unavailability for in-person testimony
8  allows a court the discretion to grant remote testimony. See *United States v.*
9  *Carter,* 907 F.3d 1199, 1209-1210 (9th Cir. 2018) (dispensing with physical
10  confrontation must be based on a case-specific finding of necessity); *see also*
11  *United States v. Rosenau,* 870 F.Supp.2d 1109, 1112 (W.D. Wash. 2012) (finding
12  that a witness's inability to enter the United States because of a foreign court order
13  demonstrated unavailability for in-person testimony).
14       Where, as here, the defendant seeks to present testimony through live two-
15  way video, the reliability of that testimony is otherwise assured when it is taken
16  under oath, subject to contemporaneous cross-examination, and conducted through
17  procedures that permit assessment of the witness's demeanor. *See Craig,* 497 U.S.
18  at 846, 851 (1990); *see also Rosenau,* 870 F.Supp.2d at 1113-14 (reliability
19  adequately ensured via cross-examination, administering of an oath, and jury
20  observation of the witness's demeanor). The Supreme Court has emphasized that
21  these safeguards – not physical presence alone – are the constitutional touchstones
22  of reliable testimony. *Craig*, 497 U.S. at 851 (competence, testimony under oath,
23  opportunity for cross-examination, and ability for the judge, jury and parties to
24  view the witness's demeanor represent the key elements of reliability); *see also*
25  *United States v. King,* 552 F.2d 833, 840 (9th Cir. 1976) (holding that video-
26  conferencing technology can provide confrontation opportunities through real-time
27  visual and audio transmission, and is reliable if conducted with proper procedures
28  under the supervision of the court).

## IV. ARGUMENT

### A. Live two-way remote testimony is constitutionally required to allow Mr. Alsheikh to present a complete defense to the FSI.

Two-way video testimony is necessary because the witnesses identified below are unavailable to appear in person at trial. (*See* Lieser Decl., ¶¶ 2-3.) The below identified witness testimony is critical, exculpatory, and non-duplicative, and enabling it by live two-way transmission vindicates Mr. Alsheikh's Sixth Amendment right to obtain and present witnesses in his favor. (*Id.* at ¶ 4.) *Washington v. Texas*, 388 U.S. at 22 ("It is difficult to see how the Constitution is any less violated by arbitrary rules that prevent whole categories of defense witnesses from testifying…"). Consistent with *Crane*, the Constitution guarantees a *meaningful* opportunity to present a complete defense. *Crane*, 476 U.S. at 690.

The below chart represents the identity of the witness by initials, the reason for unavailability for in court testimony (*Id.* at ¶ 3), and a summary of the testimony. Excluding the below witnesses' testimony would imperil Mr. Alsheikh's Constitutional right and prevent Mr. Alsheikh from presenting a complete defense. (*See id.* at ¶ 4.)

| DEFENSE WITNESS UNAVAILABILITY |||
|---|---|---|
| **WITNESS** | **REASON FOR UNAVAILABILITY** | **DESCRIPTION OF TESTIMONY** |
| █ | Place of residence: Syria.<br><br>Travel restrictions on Syrian nationals.<br><br>No travel permissions to enter the U.S.<br><br>International travel hardship including financial constraints. | ████████ |
| █ | Place of residence: Syria.<br><br>Travel restrictions on Syrian nationals. | ████████ |

| | | | |
|---|---|---|---|
| 1 | | No travel permissions to enter the U.S. | ■ |
| 2 | | ■ | |
| 3 | | | |
| 4 | | International travel hardship including financial constraints. | |
| 5 | ■ | Place of residence: Syria. | ■ |
| 6 | | Travel restrictions on Syrian nationals. | |
| 7 | | | |
| 8 | | No travel permissions to enter the U.S. | |
| 9 | | ■ | |
| 10 | | | |
| 11 | | International travel hardship including financial constraints. | |
| 12 | ■ | Place of residence: Syria, Turkey. | ■ |
| 13 | | Travel restrictions on Syrian nationals. | |
| 14 | | Uncertain travel permissions to enter the U.S. | |
| 15 | | | |
| 16 | | International travel hardship including financial constraints. | |
| 17 | ■ | Place of residence: Lebanon. | ■ |
| 18 | | International travel hardship including financial constraints. | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | ■ | Place of residence: Syria. | ■ |
| 24 | | Travel restrictions on Syrian nationals. | |
| 25 | | | |
| 26 | | No travel permissions to enter the U.S. | |
| 27 | | International travel hardship including financial constraints. | |
| 28 | | | |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5 | ██ | Place of residence: UAE, Syria.<br><br>Travel restrictions on Syrian nationals.<br><br>Uncertain travel permissions to enter the U.S.<br><br>International travel hardship including financial constraints. | ██ |
| 6<br>7<br>8<br>9<br>10 | ██ | Place of residence: Syria.<br><br>Travel restrictions on Syrian nationals.<br><br>No travel permissions to enter the U.S.<br><br>International travel hardship including financial constraints. | ██ |
| 11<br>12<br>13<br>14<br>15<br>16 | ██ | Place of residence: Lebanon.<br><br>Uncertain travel permissions to enter the U.S.<br><br>International travel hardship including financial constraints. | ██ |
| 17<br>18<br>19<br>20<br>21<br>22 | ██ | Place of residence: Syria.<br><br>Travel restrictions on Syrian nationals.<br><br>No travel permissions to enter the U.S.<br><br>International travel hardship including financial constraints. | ██ |
| 23<br>24<br>25<br>26<br>27 | ██ | Place of residence: Lebanon.<br><br>Uncertain travel permissions to enter the U.S.<br><br>International travel hardship including financial constraints. | ██ |
| 28 | ██ | Place of residence: Sweden. | ██ |

| | | |
|---|---|---|
| | International travel hardship including financial constraints and particular health concerns aggravated by long travel (heart issues). | ■ |
| ■ | Place of residence: France.<br><br>■<br><br>■<br><br>■<br><br>International travel hardship including financial constraints. | ■ |
| ■ | Place of residence: France.<br><br>■<br><br>■<br><br>International travel hardship including financial constraints. | ■ |
| ■ | Place of residence: France.<br><br>International travel hardship including financial constraints and work-related concerns that preclude international travel. | ■ |

(*Id.* at ¶ 3.)

//

### B. Witness unavailability mandates two-way video and reliability can be otherwise assured.

*1. Two-way video testimony is necessary because the witnesses are unavailable for in-person testimony.*

Courts have recognized that good-faith efforts to secure in-person testimony, combined with circumstances involving international witnesses that necessitate remote testimony, create a sufficient justification for finding a witness unavailable for live, in-person testimony. *See Page,* 390 U.S. at 722-23; *see also Rosenau*, 870 F.Supp.2d at 1110 (holding that a witness was unavailable for live, in-person testimony in the United States based on a Canadian court order precluding international travel).

The defense has exercised diligent, good-faith efforts to secure in-person testimony, but those efforts are foreclosed by circumstances beyond its control - international travel restrictions and other impediments to international travel, including the inability to secure necessary travel documents and logistical obstacles with international travel. (*See* Lieser Decl., ¶¶ 2-3); *Barber v. Page,* 390 U.S. 719 (1968) (a witness is considered unavailable if the counsel seeking testimony has made a good-faith effort to obtain witness presence at trial).

First, the listed witnesses all reside overseas in multiple countries, including Syria, Lebanon, the United Arab Emirates, Sweden, and France, and many do not currently have valid travel permissions to enter the United States. (Lieser Decl., ¶¶ 2-3.)

Second, the witnesses who reside in Syria are currently subject to a travel ban implemented by the United States government on December 16, 2025.[1] This restriction operates as a prohibition for Syrian citizens to enter the United States

---

[1] Daphne Psaledakis, *Trump Adds Seven Countries, Including Syria, to Full Travel Ban List*, Reuters (Dec. 16, 2025), https://www.reuters.com/world/us/trump-further-restricts-foreign-nationals-entry-us-white-house-says-2025-12-16/. (*See also* Lieser Decl., ¶ 3.)

8

MOTION FOR LIVE TWO-WAY VIDEO TESTIMONY

and went into effect on January 1, 2026.[2] Further, even without a restrictive travel ban in place, the U.S. Embassy in Damascus has been closed since February 2012, meaning the U.S. government cannot provide routine services in Syria.[3] Syrians seeking assistance or visas into the United States are forced to travel to Jordan, Lebanon, or another neighboring country.[4] Finally, despite the defense's efforts to procure travel documents from the Department of Homeland Security, no authorizations have yet been provided and the date by which they might be is unknown. (Lieser Decl., ¶ 2.) Even if authorization was achieved, international travel hardships, including financial and other considerations, pose other impediments to international travel. (*Id.* at ¶¶ 2-3.)

### 2. The reliability of the witnesses' testimony can be otherwise assured.

Pursuant to the safeguards recognized as judicially valid under Supreme Court and Ninth Circuit precedent, the reliability of the listed witnesses' remote live testimony will be otherwise assured. The touchstones of reliable testimony are testimony provided under oath, subject to contemporaneous cross-examination, and conducted through procedures that permit assessment of the witness's demeanor. *Craig,* 497 U.S. at 851; s*ee also Rosenau,* 870 F.Supp.2d at 1113-14 (finding that live two-way video testimony under oath surpassed the *Craig* requirements and was sufficient to ensure reliability).

---

[2] Psaledakis, at n. 1., *supra*.

[3] U.S. Dep't of State, *Suspending Embassy Operations in Syria* (Feb. 6, 2012), archived at https://2009-2017.state.gov/r/pa/prs/ps/2012/02/183352.htm (on file with the U.S. Dept. of State).

[4] However, travel across the Syria-Lebanon border is increasingly dangerous due to recent clashes between Hezbollah soldiers and Syrian retaliatory fire amid the post-Assad regime instability. SARI Global, *Flash Report: Clashes at the Lebanese-Syrian Borders* (Mar. 16, 2025), https://reliefweb.int/attachments/579d3641-bc16-4690-a3b1-31f38f064f41/Flash%20Report%20-%20Clashes%20at%20the%20Lebanese-Syrian%20Borders.pdf.

The requirements found satisfactory in *Craig* and *Rosenau* are surpassed by the below proposed procedures, ensuring that confrontation opportunity is preserved and the testimony remains reliable.

Defense counsel proposes the following safeguards for those individuals residing in Syria, where a U.S. Embassy is not accessible: 1) The remote live testimony is taken under oath; 2) the testifying witness is accompanied by an agreed-upon neutral third party (a lawyer); 3) the testifying witness conducts their testimony in an agreed-upon, neutral, third-party site (the law office of the neutral third party); and 4) the government is afforded the opportunity for contemporaneous cross-examination. If the Court seeks additional measures, these may include: 360-degree room scans at the start of testimony and after breaks; no unauthorized persons or devices present in the room during testimony; a standardized break protocol; and a pre-session technology test.

For those witnesses not residing in Syria and residing in countries with an active U.S. Embassy or Consulate, defense counsel proposes the following safeguards: 1) The remote live testimony is taken under oath; 2) the testifying witness is accompanied by an agreed-upon neutral third party (an official within the U.S. Embassy or Consulate of their respective country); 3) the testifying witness conducts their testimony in an agreed-upon, neutral, third-party site (the U.S. Embassy or Consulate of their respective country); and 4) the government is afforded the opportunity for contemporaneous cross-examination.

All remote live testimony would be conducted under the supervision of this Court. The Court will administer oaths and verify identity; and perjury warnings will be delivered in the witness's language by a certified interpreter.

## V.  CONCLUSION

The identified defense witnesses are unavailable to testify in court at trial as a matter of fact and law. Present in this case are a variety of circumstances demonstrating necessity, including witnesses' residence overseas, a lack of travel

permissions to the United States, and a comprehensive travel ban on Syrian nationals precluding entry into the United States.

On these facts, as set forth above, Mr. Alsheikh respectfully requests an Order permitting these witnesses to testify at trial via live two-way video.

Dated: January 22, 2026                    Respectfully submitted,

                                           By: _____/s/_____
                                               NINA MARINO
                                               JENNIFER LIESER
                                               MORIAH RADIN
                                               COLLIN CATE
                                               Attorneys for Defendant
                                               Samir Ousman Alsheikh