NINA MARINO, ESQ. (State Bar No. 142815)
JENNIFER LIESER, ESQ. (State Bar No. 313707)
MORIAH RADIN, ESQ. (State Bar No. 260245)
COLLIN CATE, ESQ. (State Bar No. 365876)
KAPLAN MARINO, PC
1546 N. Fairfax Ave.
Los Angeles, CA 90046
Tel: (310) 557-0007
Fax: (310) 861-1776
E-mail: marino@kaplanmarino.com
        lieser@kaplanmarino.com
        radin@kaplanmarino.com
        cate@kaplanmarino.com

Attorneys for Defendant
SAMIR OUSMAN ALSHEIKH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 24-CR-00483-HDV |
| Plaintiff, | **NOTICE OF MOTION AND MOTION IN LIMINE TO PRECLUDE TESTIMONY BY FACT WITNESSES ABOUT MATTERS OF LAW AND LEGAL CONCLUSIONS, INCLUDING THE USE OF THE TERMS TORTURE AND FRAUD** |
| v. | |
| SAMIR OUSMAN ALSHEIKH | |
| Defendant. | Honorable Hernan D. Vera |
| | Hearing Date: February 19, 2026 |
| | Trial Date: March 2, 2026 |

1    PLEASE TAKE NOTICE that on February 19, 2026, or as soon thereafter as
2    the matter may be heard in the above-referenced court, defendant Samir Ousman
3    Alsheikh, by and through undersigned counsel, hereby moves this Court in limine
4    for an order precluding testimony by fact witnesses about matters of law and legal
5    conclusions including the terms torture and fraud, and directing government counsel
6    to admonish their witnesses to refrain from characterizing any conduct with legal
7    conclusions. This motion is brought pursuant to Federal Rules of Evidence 401–403,
8    701, and 704(b). This Motion is based on Alsheikh's rights and privileges under the
9    Fifth and Sixth Amendments to the United States Constitution, prevailing case law,
10   the Memorandum of Points and Authorities set forth below, the pleadings and papers
11   on file, and any oral argument permitted by the Court.

14   Dated: January 26, 2026                    Respectfully submitted,

16                                              By: /s/ *Nina Marino*
17                                                  NINA MARINO
                                                    JENNIFER LIESER
18                                                  MORIAH RADIN
                                                    COLLIN CATE
19                                                  Attorneys for Defendant
20                                                  Samir Ousman Alsheikh

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Samir Ousman Alsheikh moves in limine to preclude fact witnesses from providing testimony or evidence about matters of law, and any legal conclusions, including views that Alsheikh committed torture or engaged in fraud, on the grounds that the use of legal conclusions is improper and inadmissible, risks usurping the jury's role, invites confusion of the issues, and carries a substantial danger of unfair prejudice that substantially outweighs any probative value.

The First Superseding Indictment ("FSI") charges Alsheikh with conspiracy to commit torture, torture, fraud and misuse of visas, and attempted unlawful procurement of naturalization, arising from alleged conduct in Syria between approximately 2005 and 2008 when he allegedly served as head of Adra Prison near Damascus. Whether any proved conduct constitutes "torture" under 18 U.S.C. §§ 2340 and 2340A is a central legal question for the jury. *See* 18 U.S.C. §§ 2340, 2340A. In addition, whether any acts or statements constitute "fraud" in the context of 18 U.S.C. §§ 1546(a) or 1425(a) is a legal conclusion. Lastly, the use of the term victim assumes the existence of a crime; a fact that is heavily disputed. Allowing fact witnesses to testify to legal matters and conclusions of law would impermissibly present a legal conclusion to the jury, risk usurping the jury's role, and cause unfair prejudice and confusion.

## II. RELEVANT FACTUAL BACKGROUND

According to the First Superseding Indictment ("FSI"), from in or about 2005 through in or about 2008, Alsheikh was the head of Damascus Central Prison, known as Adra Prison, operated by the Syrian Interior Ministry. The FSI alleges that Adra Prison had a "Punishment Wing," also known as Wing 13, which included below-ground isolation cells and an interrogation room. It alleges that

during his tenure, Alsheikh ordered prisoners sent to Wing 13 and monitored activity through surveillance cameras from his office.

Count One alleges a conspiracy to commit torture, asserting that the object was to inflict severe physical and mental pain and suffering on political dissidents and others perceived to sympathize with dissent, to punish and deter opposition to the Syrian government. The FSI's "manner and means" section in Count One lists fourteen categories of alleged conduct through which the conspiracy was purportedly accomplished. These categories include both General Prison Conditions, (Dkt. 48, ¶¶ 20(a)-(e)), and specific acts of alleged torture.

Counts Two through Four charge substantive violations of § 2340A(a), identifying three alleged victims, K.A.M., M.S., and N.S., and alleging that, at Alsheikh's direction, they were sent to Wing 13, where they were subjected to combinations of the techniques described in Count One, with a focus on specific acts of alleged torture, specifically the "flying carpet," suspension and beatings, and related conduct.

Counts Five and Six charge immigration and naturalization violations premised on alleged false statements in visa and naturalization applications regarding past conduct and affiliations.

## III. LEGAL STANDARDS

### A. The federal definition of torture.

The Torture Act defines "torture" as an act committed by a person acting under color of law specifically intended to inflict severe physical or mental pain or suffering upon another person within his custody or physical control. 18 U.S.C. § 2340(1). "Severe mental pain or suffering" means prolonged mental harm caused by or resulting from certain enumerated acts. 18 U.S.C. § 2340(2). The statute also excludes pain or suffering that "arises only from, is inherent in, or is incidental to lawful sanctions." 18 U.S.C. § 2340(1).

**B. Relevance and prejudice.**

Evidence is admissible if relevant unless excluded by rule or other law. Fed. R. Evid. 401–02. Even relevant evidence must be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or wasting time. Fed. R. Evid. 403; *Old Chief v. United States*, 519 U.S. 172, 180-82 (1997). Unfair prejudice is an undue tendency to prompt decision on an improper basis, commonly an emotional one. *See United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007); *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).

**C. Lay witness testimony.**

Lay opinions must be rationally based on the witness's perception, helpful to understanding the testimony or determining a fact in issue, and not based on specialized knowledge. Fed. R. Evid. 701. Testimony involving specialized knowledge cannot be presented as lay opinion testimony. Fed. R. Evid. 702; *see United States v. Lloyd*, 807 F.3d 1128, 1153-57 (9th Cir. 2015). Fact witnesses may not invade the jury's function by testifying to legal conclusions, thereby telling the jury the result the witness believes the jury should reach. *United States v. Canipe,* 569 F.3d 597, 603 (6th Cir. 2009) (proper to restrict lay "opinion" testimony), citing *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) ("The problem with [lay witness] testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards.... This invade[s] the province of the court to determine the applicable law ...."). Neither lay nor expert witnesses may state legal conclusions or apply the governing legal standard to the facts in a way that tells the jury what result to reach. *See Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004); *United States v. Gringe*, 390 F.3d 746, 751-52 (2d Cir. 2004) (lay witness's interpretation of evidence, suggesting to the jury inferences to be drawn, was improper); *Lloyd*, 807 F.3d at 1153-57.

## IV. ARGUMENT

### A. The use of legal conclusions by fact witnesses is improper and constitutes inadmissible testimony.[1]

In this prosecution, the word "torture" does not merely describe observable conduct; it embodies specific statutory elements that the jury alone may or may not find beyond a reasonable doubt: (1) an act committed under color of law, (2) specific intent to inflict severe physical or mental pain or suffering, (3) the statutory thresholds for "severe" physical pain or "prolonged" mental harm under § 2340, and (4) that the pain or suffering did not arise only from, was not inherent in, and was not incidental to lawful sanctions. Similarly, the term "fraud" in the immigration charges encompasses a material false statement made with knowledge the statement was untrue, under oath, on a required immigration document.

Whether conduct meets that definition is a mixed question reserved for the jury. Testimony, especially from lay witnesses or alleged victims, stating that conduct amounted to torture or fraud are impermissible legal conclusions. *United States v. Canipe*, 569 F.3d 597, 603 (6th Cir. 2009) (finding that legal opinions, when offered by a non-lawyer lay witness, are both "incompetent and unpersuasive.").

The Ninth Circuit has repeatedly cautioned against witnesses stating legal conclusions or using terms with precise legal meanings that tell the jury what result to reach. *See United States v. Crawford*, 239 F.3d 1086, 1091 (9th Cir. 2001) (finding the trial court erred in allowing lay witness to testify that university did not "abandon" its property because it is a legal term and the jury could have understood that the university cannot, as a matter of law, be found to have abandoned the property); *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246–47 (9th Cir. 1997) (lay opinion testimony that defendant's actions "were consistent

---

[1] Exclusion of legal conclusions from expert testimony will be separately addressed, as warranted, in any oppositions to the government's expert disclosures.

1  with" drug trafficking was improper). When a witness testifies that conduct was
2  "torture" or "fraud", the witness implicitly asserts that all statutory elements are
3  satisfied—a determination that is the jury's exclusive province. *See Bowers*, 660
4  F.2d at 529 (lay witnesses should not testify to conclusions that require application
5  of law to facts); *see also United States v. Perkins*, 470 F.3d 150 (4th Cir. 2006)
6  (noting "conclusory testimony that a company engaged in 'discrimination,' that a
7  landlord was 'negligent,' or that an investment house engaged in a 'fraudulent and
8  manipulative scheme' involves the use of terms with considerable legal baggage;
9  such testimony nearly always invades the province of the jury.") (citations
10 omitted); *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (noting
11 that the "problem with testimony containing a legal conclusion is in conveying the
12 witness' unexpressed, and perhaps erroneous, legal standards to the jury.")

For these reasons, the Court should preclude fact witnesses from offering testimony or evidence that amounts to a legal conclusion, including the terms torture and fraud, and should order the government to direct its witnesses to describe facts and conduct but not to use the terms torture or fraud which are contested legal conclusions. The terms prematurely apply a legal conclusion to anticipated facts before the Court has instructed the jury on the governing legal standard, effectively inviting jurors to accept a legal conclusion disguised as a factual description. The proper course is to describe factual evidence (what witnesses perceived, what acts occurred) and reserve legal characterization for closing argument after the jury has been instructed.

**B.     Using the terms "torture" and "fraud" poses significant Rule 403 risks that substantially outweigh any marginal probative value.**

Even if the terms "torture" and "fraud" had some marginal probative value as shorthand, their use should be excluded under Rule 403. The terms, and particularly the use of "torture," carry extraordinary emotional and moral weight,

creating a substantial danger of unfair prejudice based on an undue tendency to prompt a decision on an improper basis rather than careful application of statutory elements. *See Old Chief v. United States,* 519 U.S. 172, 180–82 (1997); *United States v. Curtin*, 489 F.3d 935, 958–59 (9th Cir. 2007). Their use also risks confusing the issues and misleading the jury by obscuring the element-by-element analysis required by §§ 2340, 1546(a) and 1425(a), and inviting jurors to accept a label instead of making their own determinations about severity, intent, duration, and lawful sanctions.

Courts routinely exercise their discretion to preclude argumentative or inflammatory labels, especially when those labels risk unfair prejudice. *See e.g., United States v. Dimora*, 843 F. Supp. 2d 799, 847 (N.D. Ohio 2012) (disallowing government counsel from using the term "corrupt commissioner" in connection with the defendant because it "may be gratuitously inflammatory, especially when alternative and less inflammatory means of summarizing the government's position are available[]" and because "describing [the defendant] as 'corrupt' tends to suggest guilt in a conclusory fashion without reference to the elements of the crime charged[]"); *Pipeline Prods., Inc. v. S&A Pizza, Inc.*, No. 4:20-CV-00130-RK, 2024 WL 4405148, at *6 (W.D. Mo. Mar. 28, 2024) (excluding inflammatory language including terms like "crook," "murderer," "rapist," "arsonist," finding these "unduly prejudicial" and "unnecessary to prove any claim at trial") *United States v. Sena*, 2021 WL 4129247, at *1 (D.N.M. Sept 9, 2021) (recognizing that the term "victim" "is prejudicial when the core issue at trial is whether a crime has been committed – and, therefore, whether there is a victim" and finding "virtually no probative value" from the use of the term); *United States v. Gaviola*, 2025 WL 2718763, at *6 (E.D. Cal. Sept. 24, 2025) (agreeing with *Sena*, 2021 WL 4129247, at *1, and precluding the use of "victim" outside of opening and closing argument without leave of court).

|   |   |
|---|---|
| 1 | Rule 403's balancing is especially acute here, where the terms "torture" and "fraud" are the precise charges to be decided and the risk of usurpation and prejudice is high. The government can fully present its case by eliciting specific, concrete facts about what occurred without using the legal labels "torture" or "fraud." The Court should instruct government counsel, who must then instruct their witnesses, to use neutral, factual descriptions (*e.g.,* "acts," "conduct," "treatment," or "experience"). This approach aligns with the Federal Rules of Evidence and long-standing Ninth Circuit guidance that witnesses do not opine on the law and that juries decide ultimate legal issues based on the Court's instructions. *See United States v. Dorsey*, 122 F.4th 850, 858 (9th Cir. 2024) ("But the rule does not allow non-expert witnesses to offer conclusory opinions 'which amount to little more than choosing up sides.'") (*citing United States v. Gadson*, 763 F.3d 1189, 1206 (9th Cir. 2014)). |

## V.     CONCLUSION

For the foregoing reasons, Alsheikh respectfully requests that the Court enter an order that no party may ask a fact witness about a matter of law, or a legal conclusion, including eliciting testimony as to whether an act constituted "torture" or "fraud," whether Alsheikh committed "torture" or "fraud," or whether Alsheikh violated any laws, and directing the government to admonish its witnesses to refrain from characterizing any conduct as "torture" or "fraud" during testimony, and granting such other and further relief as the Court deems just and proper.

//
//
//
//
//
//
//

1  DATED: January 26, 2026                    Respectfully submitted,

2

3                                             By: /s/ *Nina Marino*
4                                                  NINA MARINO
                                                   JENNIFER LIESER
5                                                  MORIAH RADIN
                                                   COLLIN CATE
6                                                  Attorneys for Defendant
7                                                  Samir Ousman Alsheikh