TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
JOSHUA O. MAUSNER (Cal. Bar No. 260251)
Assistant United States Attorney
National Security Division
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0619
     Facsimile: (213) 894-3713
     E-mail:    joshua.mausner@usdoj.gov

A. TYSEN DUVA
Assistant Attorney General
Criminal Division
PATRICK JASPERSE (D.C. Bar No. 986804)
ALEXANDRA SKINNION (Penn. Bar No. 327795)
Trial Attorneys
U.S. Department of Justice
Criminal Division
Human Rights and Special Prosecutions Section
     1301 New York Avenue, NW
     Washington, DC 20503
     Telephone: (202) 616-8917; (202) 307-6641
     Email: patrick.jasperse@usdoj.gov; alexandra.skinnion@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-00483(A)-HDV |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR MISTRIAL |
| v. | |
| SAMIR OUSMAN ALSHEIKH, | Trial Date: March 2, 2026 |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Deputy Attorney General and First Assistant United

States Attorney for the Central District of California, Assistant United States Attorney Joshua O. Mausner, the Assistant Attorney General for the Criminal Division of the Department of Justice, and Department of Justice Trial Attorneys Patrick Jasperse and Alexandra Skinnion, hereby files its Opposition to Defendant's Motion for a Mistrial (Dkt. 267).

The Opposition is based upon the attached memorandum of points and authorities, the exhibits thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 15, 2026　　　　　　　　Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

/s/
_____
JOSHUA O. MAUSNER
Assistant United States Attorney

A. TYSEN DUVA
Assistant Attorney General Criminal Division

PATRICK JASPERSE
ALEXANDRA SKINNION
Trial Attorneys
U.S. Department of Justice
Criminal Division
Human Rights and Special Prosecutions Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

The Court should deny defendant's motion for a mistrial but, in an abundance of caution, should instruct the jury to disregard the testimony and references to foreign judicial opinions, to base its verdict solely on the evidence admitted at trial, and not to rely on any purported judicial findings.

**II.   BACKGROUND**

"Hanadi"[1] was qualified as an expert witness and testified on Friday as defendant's final witness.  She made sweeping assertions, including that there were no reports that prisoners at Adra Prison had ever been mistreated, torture was not possible at Adra Prison, and the charges against defendant were unjust.

The 3-page expert notice provided to the government shortly before trial contained little information about the basis for her opinions:

> She will testify that although delineated in human rights reports as a prison in Syria, Adra was not to her knowledge identified as a facility in which torture occurred during the relevant time period. She will further testify that based on her interviews of former prisoners, including political activists, she concludes that torture or mistreatment did not occur at Adra during the relevant time.
>
> [Hanadi]'s opinion will be based upon her training, research, and her review of extensive, official human rights reports and United Nations reports as well as her training and career experience in documenting human rights violations in Syria for various organizations and publications starting in 2002

---

[1] Pursuant to the defense's request and the Court's order, the government is referring to the witness by her first name only even though the defense already elicited her full name in open court, exhibits containing her full name were admitted into evidence, and she was identified by her full name in a previous pleading that was filed prior to the defense expressing concern about her identity (Dkt. 251).  The government has redacted her last name from attached Exhibit A.

and occurring during the pertinent timeframe of 2005 and 2008, and her interviews of former prisoners.

(Attached Ex. A.)

During her direct testimony, Hanadi was equally vague about the basis of her opinions.  She said that she "collected data" from 2002 to 2011 by interviewing "hundreds" of former detainees, their family members, and their attorneys.

During cross-examination, Hanadi clarified that she had spoken to only 15 to 20 individuals who had been imprisoned at Adra Prison from 2005 to 2008.  (Dkt. 267-1 at 3-4.)  She stated that she would not be surprised that there were 10,000 prisoners at Adra at any one time while defendant was in charge of the prison.  (Id. at 4-5.) Despite having interviewed at most 0.2% of the prisoners who were at Adra Prison at any one time during defendant's four years as the prison's director, she continued to assert that "[f]rom the information I know, there was no torture in Adra."  (Id. at 22.)

In light of such broad and definitive assertions that were based on such scant information, the government inquired as to various sources of information that she had not considered:

(1)  She said she had not interviewed the three government witnesses who testified during trial that they were subjected to severe physical and mental pain and suffering while imprisoned at Adra while defendant was in charge of the prison.  (Id. at 5-6).

(2)  She said she had not been provided nor read reports of interviews with those witnesses.  (Id. at 6-7).

(3)  She said she had not been provided nor read the report of Dr. Reinoud Leenders, the government's expert witness on

Syrian prisons (id. at 9-10), who in his report cited numerous reports that found prisoners at Adra were tortured during the relevant time period (Dkt. 191-1).

(4) She said she was unaware of two reports issued at the time by human rights organizations that reported that prisoners at Adra Prison were tortured during the relevant time period. (Dkt. 267-1 at 14, 16, 18.)

(5) She said she was unfamiliar with an asylum case in France and an asylum case in the Netherlands that addressed torture at Adra Prison during the relevant time period. (Id. at 20-25.)

The defense objected to the questions about the asylum cases on the grounds of scope and foundation. (Id. at 20-22.) The Court overruled those objections, adding: "I will instruction the jury, though[,] that questions by the attorneys are not evidence." (Id. at 22.) After Hanadi's testimony was completed, the defense asked for a mistrial based on questions about the French and Dutch asylum cases, which the Court denied. On Sunday, the defense renewed its motion for a mistrial on the same grounds concerning the foreign judicial opinions. (Dkt. 267.)

**III. LEGAL STANDARD**

Declaring a mistrial is an extraordinary remedy.[2] The Supreme Court has held that a district court may order a mistrial only when, "taking all the circumstances into consideration, there is a manifest necessity for doing so." Renico v. Lett, 559 U.S. 766, 773-74

---

[2] Were the Court to declare a mistrial, it is not known whether the government's fact witnesses from overseas would be willing to return to the United States and go through the trauma of recounting their experiences at Adra Prison yet again.

3

(2010).  The "manifest necessity" standard is not interpreted literally; rather, "a mistrial is appropriate when there is a 'high degree' of necessity." Id. at 774.  The "decision to declare a mistrial is left to the 'sound discretion' of the judge, but 'the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious cases.'" Id. (quoting United States v. Perez, 22 U.S. 579, 580 (1824)).  Appellate courts afford a district court's decision "great deference," Arizona v. Washington, 434 U.S. 497, 511 (1978), as the district court "is in the best position to determine whether an incident merits a mistrial," United States v. Lemus, 847 F.3d 1016, 1025 (9th Cir. 2016).

"Where evidence heard by the jury is later ruled inadmissible, a cautionary instruction is ordinarily sufficient to cure any alleged prejudice to the defendant.  Declaring a mistrial is appropriate only where a cautionary instruction is unlikely to cure the prejudicial effect of an error." United States v. Charmley, 764 F.2d 675, 677 (9th Cir. 1985) (citations omitted) (affirming district court's denial of a mistrial where the district court gave a cautionary instruction); United States v. Morris, 827 F.2d 1348, 1351 (9th Cir. 1987) ("In determining whether a mistrial is warranted when the court promptly strikes the challenged testimony and gives a curative instruction, the court must weigh the forcefulness of the instruction against the degree of prejudice generated by the evidence.").

**IV.  ARGUMENT**

A mistrial is not warranted here for multiple reasons.

First, the "probative force" of the evidence properly admitted against the defendant during the course of this trial significantly

4

outweighs any indirect prejudice that might have been implied from the brief references to two foreign judicial opinions on cross examination. See Morris, 827 F.2d at 1351 (affirming district court's decision not to grant a mistrial where the district court weighed "the degree of prejudice generated by the [inadmissible] evidence" against the "admissible evidence which support[ed] the verdict"). Over the five days that the government presented its case in chief, the jury heard powerful, explicit, and detailed testimony from three victims who had experienced severe physical and mental pain and suffering, including through the use of devices, such as the Magic Carpet, which were designed to torture individuals. The testimony revealed that in one instance defendant directly inflicted this pain and suffering on the victim and in the other instances he ordered and directed the commission of these brutal acts. In addition, the government presented the testimony of an expert concerning Syria's totalitarian regime and use of its repressive apparatus in Adra prison from 2005 to 2008, which included testimony concerning the use of torture at this facility. By contrast, the challenged questions and testimony involve only the government's attempt to impeach an opinion — rather than an eyewitness account — of a single defense witness. Such evidence, the admissibility of which is unquestioned, significantly outweighed any prejudice that may have been caused by the content of the few disputed questions here.

Second, in Daubert v. Merrell Dow Pharms., Inc., the Supreme Court endorsed impeachment of an expert with "vigorous cross-examination" and "presentation of contrary evidence." 509 U.S. 579, 596 (1993). An appropriate subject of this "rigorous cross-

5

examination" is the relevant materials an expert failed to review in forming her opinion.  Id.; Arriaga v. Logix Fed. Credit Union, No. 18-cv-9128, 2022 U.S. Dist. LEXIS 140287, at *8 (C.D. Cal. April 22, 2022) (finding that opposing party could cross examine expert on expert's failure to review certain materials); see also Caruso v. Solorio, No. 1:15-cv-780, 2020 U.S. Dist. LEXIS 245841, at *22 (E.D. Cal. Jan. 4, 2021) (finding that the fact that the expert did not review certain materials went to weight and credibility of the expert's opinion, reasoning "[t]he relative weakness or strength of the factual underpinnings of the expert's opinion goes to weight and credibility, rather than admissibility," and "[t]he information that an expert chooses to review or not review are generally fair-game for cross-examination, so long as the materials have some reasonable relationship to the opinion at issue") (quotation omitted).

Hanadi testified categorically that there was no torture at Adra Prison during the relevant time period and that there were no reports of torture at Adra Prison during the relevant time period.  Asking whether Hanadi was familiar with these reports and cases was proper, as it was designed to discredit Hanadi's testimony by challenging the reliability of her opinions and the methods by which she arrived at those opinions.  The government was not attempting to introduce the foreign cases for the truth of the matter asserted, i.e., that the defendant is guilty of torture because other court cases have referenced torture at Adra Prison.  Rather, the point was that a witness who gave emphatic, expansive, conclusive opinions about whether defendant was guilty had not considered all of the information available.

As it relates, however, to the government's questioning in which it read brief segments from two foreign asylum cases as part of its targeted and concise impeachment of an expert witness, the government requests that the challenged questions and testimony be stricken and that the Court give a curative instruction.  Specifically, the government proposes that, at the beginning of the court day on Monday, prior to closing arguments and the Court's final instructions, the Court reiterate its instruction that lawyers' questions are not evidence; and instruct the jury (1) to disregard any references to holdings by courts in France and the Netherlands, (2) that French and Dutch judicial opinions are not evidence in this case, (3) that the jury must base its verdict solely on the evidence admitted at trial, and (4) the jury must independently determine the facts without deference to any purported findings from other proceedings.[3]  Such cautionary instructions have been held to be "sufficient to cure any alleged prejudice" when juries hear evidence later found to be inadmissible.  Charmley, 764 F.2d at 677; see also Morris, 827 F.2d at 1351.

In cases presenting circumstances that are instructive to analyzing the present case, the Ninth Circuit has affirmed district courts' refusals to grant a mistrial, including when the courts instead elected to strike the contested testimony and issue a curative instruction.  See, e.g., United States v. Gutierrez-Insunza, No. 91-50249, 1992 U.S. App. LEXIS 24870 (9th Cir. Sept. 25, 1992)

---

[3] Such instructions largely track defendant's proposed instruction.  (Dkt. 267 at 15-16.)  The government does not agree that the jury should be instructed that "no court has made any finding that torture occurred at Adra Prison during the period Alsheikh served as director," as this is not true.

(affirming district court's decision to deny motion for a mistrial and instead strike challenged testimony from the record and promptly instruct the jury to disregard the improper testimony); United States v. Benson, No., 2025 U.S. App. LEXIS 24552 (9th Cir. Sept. 23, 2025) (affirming district court's decision to strike improper testimony and give a curative instruction instead of declaring a mistrial); United States v. Martinez, No. 23-4290, 2025 U.S. App. LEXIS 21525 (9th Cir. Aug. 22, 2025) (affirming the district court's denial of a mistrial where the questioning on inadmissible evidence was "limited" and the district court "immediately admonished and instructed the jury" not to consider the evidence).

Third, to the extent the defense believed the government's questions misrepresented the holding of the foreign cases, the defense could have addressed such concerns during redirect examination.  There has been back and forth over documents – including non-admitted documents used for impeachment – throughout the trial.  For example, when the defense thought the government's attempted impeachment of defense witness Talal Abu Dan with a Swedish law enforcement report was incomplete, the defense brought out a portion of the report that the government had not inquired about. The defense had the same opportunity here.

The defense was well aware of the French and Dutch cases.  The cases were cited in Dr. Leenders' expert report, which the defense has had for nearly one year.  (Dkt. 191-1 at 25, ¶75).  The appendix to Dr. Leenders' report included links to the cases.  (Id. at 45, 49.)  The defense previously challenged Dr. Leenders' characterization of the French case (Dkt. 191-2 at 8), and in

response the government quoted the same portion of the case that it asked Hanadi about during her cross examination (Dkt. 222 at 20).

Finally, the cases defendant relies upon to support his argument for a mistrial are distinguishable from the instant case. Defendant's mistrial motion relies primarily on United States v. Sine, 493 F.3d 1021 (9th Cir. 2007), in which the Ninth Circuit faulted the government for extensively cross-examining multiple witnesses, including the defendant, regarding an Ohio civil court's "fact finding and derogatory character assessments" of the defendant. 493 F.3d at 1024, 1037. Indeed, the government asked 200 questions about the Ohio court's findings of multiple witnesses, peppered the defendant with questions about the Ohio court's ruling, and referenced the ruling in closing argument. Id. at 1024, 1028, 1032, 1037. The Ohio ruling directly opined on defendant's motivation and truthfulness and the Ninth Circuit was troubled about the potential for the jury to substitute the Ohio court's evaluation of the defendant's credibility for its own. Id. at 1027, 1034, 1040. Despite the nature of the Ohio ruling and extensive exposure of the jury to the ruling, the Ninth Circuit affirmed the defendant's conviction for mail fraud on plain error review, finding the defendant failed to demonstrate a reasonable probability that the jury's verdict would be altered absent the references to the Ohio case. Id. at 1040-41.

By contrast, the references in the instant case to the French and Dutch asylum cases were far more limited than the extensive references to the Ohio case in Sine — they comprise less than five pages of transcript for only one of the sixteen witnesses who have testified over the course of seven days. Furthermore, the portions

9

of the French and Dutch cases referenced in the government's questions addressed torture at Adra Prison generally and did not involve the defendant or any victims in this case, whereas the findings of the Ohio court at issue in Sine were directly about the defendant and his motivation and truthfulness.  Even without the curative instruction that is available here, Sine noted that the admission of facts from judicial opinions does not always fail the Rule 403 balancing test.  Id. at 1034.  If given a cautionary instruction, it is highly improbable that the jury will make its decision based on fleeting references to French and Dutch asylum cases – references that lasted no more than a few minutes and were based on court cases not addressing the defendant specifically.[4]

The defendant's significant reliance on other cases concerning the admission of judicial findings of fact is similarly unavailing.  In United States v. Wiggan, 700 F.3d 1204 (9th Cir. 2012), the defendant was convicted of making a false statement to the FBI and of perjury stemming from her testimony before a grand jury.  At trial, the government called the grand jury foreperson, who testified not only regarding the materiality of the defendant's statement to the grand jury's investigation, but also about the atmosphere in the grand jury room, the defendant's demeanor, and his and other grand jurors' assessment that the defendant was not credible.  The grand juror repeated multiple times his opinion that the defendant was not

_____

[4] This is particularly true in light of the fact that the Court has repeatedly instructed the jury that attorneys' questions are not evidence, an instruction the Court reminded the jurors of during Hanadi's cross examination.  (Dkt. 267-1 at 22.)  A jury is presumed to follow instructions.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000).

credible.  Wiggan, 700 F.3d at 1209, 1213.  The grand juror also testified that he had sat on the grand jury for two years, had heard 200 to 300 witnesses testify, and the defendant was the only witness the grand jury had indicted for perjury before them.  Id. at 1215.  The Ninth Circuit found error in admission of the grand juror's testimony about his and other grand jurors' assessment of the defendant's credibility when the defendant's credibility was at the heart of the perjury prosecution, finding the danger of unfair prejudice outweighed the probative value of the testimony.  Id. at 1215.

By contrast, in the case before this Court, the jury's exposure to the foreign court findings was minimal — the judges who drafted the findings did not testify and the government referenced the findings only briefly on cross-examination of a non-fact defense witness.  Furthermore, in Wiggan, the district court did not provide a cautionary instruction that would have "greatly ameliorated" "any potential prejudice."  Id. at 1220.  In this case, given the overall probative force of the evidence presented through 16 witnesses, any danger of unfair prejudice will be relieved by providing a limiting instruction and striking the testimony at issue.[5]

Thus, in light of the entire record and "taking all the circumstances into consideration," there is no "manifest necessity" that would warrant the extraordinary remedy of a mistrial.  Renico, 559 U.S. at 773-74.

---

[5] Similarly inapplicable, in Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993), the judicial findings at issue were repeatedly referred to during the trial, read to the jury, and played a central role in the ultimate issues the jury would be deciding.  As discussed herein, that is not the case in the matter before this Court.

11

**IV.    CONCLUSION**

For these reasons, the government respectfully requests that the Court deny defendant's motion for a mistrial but instruct the jury as discussed herein.